**FOR**

**THE DISTRICT COURT OF NEVADA**

**RENO**

**A LETTER TO THE COURT**

**on copyright of an idea**

Someone cannot copyright the idea of how computer code produces or renders visualizable elements on-screen.

A game company cannot copyright footage of their game unless the company generated every conceivable screenshot or arrangement of game assets (characters, animations, designs, backgrounds), yet the truth is the company does not generate every possible arrangement of visuals available by the assets within footage recorded of their game as it relies on algorithmic computing dynamically produced by the end-user consumer through their own purchased personal computer or personal game console; being that player-input in modern 3D games dynamically produce visualizable angles to view the game assets from any variety of 3D angles, many of which angles or simulated circumstances had been originally unseen or unintended from the game author's original design which then preclude software receiving "updates" to "patch" the software with "fixes", while complex games featuring any variety of options of appearances (such as selectable characters in any combination, selectable stages, amount of on-screen game visuals like health bars being in any arrangement of potential health bar values between full to empty) would require every conceivable arrangement and angle of those visuals in snapshot or film form to be extremely long unreasonable films or otherwise all assets and any imagined way those assets could be seen are considerable as copyrighted altogether as "the idea of everything depictable within that game, by that game author's original design" which would be exclusive (not inclusive) of the game author being able to claim copyright over injected or modified end-user content not otherwise present in the original author's design, as much as a film considered as

a series of still images only is protected by copyright for the successive series of still images which depict the plot, and not the mere ideas of such characters engaging in any actions, with or without being plot-relevant canon or headcanon actions (i.e. The literal imagined "idea" of M.Bison doing a specific pose or short sequence of poses; non-conditional and irrelevant to any additional or referencable plot or characterizable trait), lest the "idea of a character" be copyrightable, and "anything that character could imaginitively ever do" regardless if the copyright owner imagines it or someone else does, even without being conveyed in a material way for being considerable as "ideas" which the character might do but not yet formed in a material tangible way.

If an idea cannot be copyrighted, the idea of "a fictional character doing anything" cannot be copyrighted to assume claim over "doing anything" as any and all derivative works of the "fictional character".

If an idea can be copyrighted, then proprietary knowledge exists, and individuals can be evaluated as valuable because of their ideas which they might use to their own benefit or however else they might choose, not obligated or demanded to share-for-free any of their valuable ideas, even towards securing careers and job security for being a valuable and irreplaceable member of society and/or employee of a company tasked with creatively inventing marketable ideas, inclusive of artists and their own original art style techniques.

Plaintiff has context for ownership of the submitted, considered, corresponded, registered, copyrighted game footage of a modified M.Bison in a modified Street Fighter V performing the grasp-and-lift movement through multiple routes: (1) The Street Fighter V game footage is modified to include a 3D animation designed by Plaintiff, and that same 3D animation not provided or designed by Defendants within Street Fighter V, (2) Defendants did not design (or copyright by renderable assets) Plaintiff's modified animation or Plaintiff's ability to produce such modifications, (3) Plaintiff registered the copyright as a video, an audiovisual work, a film, displaying unique content not found in any other Street Fighter V game footage which might otherwise be copyrighted by Defendants, (4) Plaintiff did not distribute the modified game files, so even other individuals could not have recorded or uploaded similar video footage nor been

able to claim copyright over similar game footage, lending that there is not any other similar public footage of M. Bison performing Plaintiff's grasp-and-lift animation and had otherwise been individually displayed uncontested by Plaintiff alone between 2021–2024 until Defendants' first copying, and (5) As a film, if seen as an animation, then Defendants' M. Bison character performing Plaintiff's "The fictitious very strong fighter character who grasps the opponent abdomen with a single hand and then lifts the opponent up by the abdomen up off of the ground and throws the opponent vertically into the air for a followup attack" movement, is a registered copyright film owned by Plaintiff tangibly depicting the concept of "M.Bison doing something Defendants' didn't previously depict M.Bison doing", a fair-use short commentary film displaying less than 30 seconds of Defendants' copyrighted content, implying Defendants were not—(or could have otherwise been, assuming a reaction inclusive of feelings of inspiration or mockery which might encourage better future designs)—making interesting or entertaining content for Street Fighter V; that even indirectly otherwise and further still, Plaintiff might even outright take credit for Defendants efforts in their own reproducing of the M.Bison special move animation in Street Fighter 6, as Defendants must have in-fact beared witness to Plaintiff's original publicly displayed video upload and, in-turn, became encouraged by inspiration, mockery, or otherwise to implement a better design into M. Bison for Street Fighter 6; though sorely, it happened to explicitly be Plaintiff's own original animation design, and Plaintiff was not previously credited in any meaningful way for this original design, even though the idea of the new grasp-and-lift animation special move addition for M. Bison in Street Fighter 6 was reasonably inferred by Defendants for improving the marketable value of their M. Bison character as referencing a significant portion of Plaintiff's 29 second copyrighted animation, and not as some public-attack commentary mocking Plaintiff's existence in front of millions of consumer owners which would have otherwise been libel and slander, and Plaintiff would just be issuing some other civil complaint against Defendants with one civil complaint or another lodged by Plaintiff against Defendants, ultimately leading to any seemingly reasonable outcome that Defendants either settled or lost their defense to Plaintiff, leading to a large monetary reward for Plaintiff one way or the other; and Plaintiff feeling slightly guilty for being personally more invested in the idea of Plaintiff's own monetary income wrestled from Defendants' improper

enrichment from Plaintiff's work, rather than truly willing to follow this case through multiple court appearances towards a winning outcome that also establishes case-law and judge opinions, even if such valuable case and judge opinions might exist, as Plaintiff doesn't intend to need to resort to litigation for future life endeavors, of which Plaintiff has a limited personal hobby or interest in other legal cases other than Plaintiff's own; and Plaintiff intends no insult to the court and the court's good and invested and interested works in judicial proceedings, while in-general Plaintiff seems to believe so much of this case as a win for Plaintiff would only be justifying or validating rules-already-on-the-books for punishing Defendants over some mere company-employee mistake, likely even without doing much for copyright case-law other than reminding that copyright exists; leading Plaintiff to believe so much about this case is probably not all that interesting towards an establishing career step for lawyers or court representatives besides simply justifying that which is the right thing to do in a situation such as this—which amuses Plaintiff to have discovered that there aren't already more cases of copyright infringement exactly similar to this insofar that most companies including Defendants' generally do not and have not made a historical amount of mistakes similar to this; that from top-to-bottom, there are so very many specific, non-standard, individualized, and unique situations pinning this seemingly general copyright infringement complaint within our country which hears copyright infringement complaints.

Plaintiff might imagine that a possible outcome to winning this case (rather than accepting settlement) might infer a precedent for what could be copyrightable content and how corporate businesses cannot be claiming copyright over the works of individuals from the general public which the company did not hire or sign agreements for company-ownership over such valued employee works; however, that would just be an amusing guess from Plaintiff and still within Plaintiff's specific limited interest in court proceedings even withstanding Plaintiff representing himself pro se. Essentially, however, if corporations and their characters would be seen as copyrightable but also marketed into every storefront, seen in books, seen on merchandise, seen on television, seen on film, seen in games, and seen in many multiples of ways to inspire a common interest amongst the general public to occupy public perceptions and considerations and

imaginations—something a marketer would intend and desire, as that would lead to increased sales—then general public ideas to be had about such products and brands and companies revered and appraised for their brand or product could not be considered explicitly as "derivative works" in "an extension owned by and to the original copyright holder" after they've become a part of common popular culture, without suffocating creativity by either requiring or avoiding royalties to corporations for every utterance or reference to their brand or product; as if a car-manufacturer having exclusive copyright over any photographs or footage of any of their cars, even though they cannot copyright the idea of viewing their cars from any arbitrary angle or context, and still to the video game publisher—whom cannot copyright the idea of viewing their game content from any arbitrary angle or context—inclusive of that which comes from an end-user whom purchased their game product then extracted game character models from the game to allow modifications to the character model movement routines before being re-referenced back into the game on-screen; otherwise that a video game developer cannot claim copyright ownership over others' modifications of their game product, surprisingly antithetical to interpretation of the Digital Millenium Copyright Act (DMCA, an historically ignored "law" that neither suffocated consumer-community awareness for interest in modifying program and game code which allowed for game mods, nor snuffed game publisher-developers' historical allowance and acceptance for after-market game mods even towards the sum cumulative "free" structure of mods to base games and also purchaseable licensed modifications of game engines such as Epic's Unreal Engine or Valve's GoldSrc Half-Life game engine, much beyond 1998 as to when the DMCA had been enacted) which could have been abusive against individual civilians while needlessly enriching corporate entities, even that enforcing the historically-ignored DMCA would potentially damage logical procession of correctly appropriating the computer industry to integrate it into civilization and society because of the irrational erratic language attempting to prohibit any individual their own right to do whatever they would like to do with anything they purchased and own; as if aiming to suggest, in analogy, that guns are dangerous and should be banned, equating to "some computer modifications could be malicious, therefore ban all computer modifications", even though the answer to the guns was the logical awareness that it wasn't the weapons themselves which were ever dangerous for great harm, but instead certain

individuals whom should not have had access to weapons as they themselves become the singular punished criminal without punishing all other law-abiding Americans whom ever freely enjoyed to excercise their God Granted right to life, liberty, and the pursuit of happiness even if by self-defense from unreasonable targeted harm that is justified, validated, and protected by the Second Amendment without engaging in harmful incident themselves despite access to the very same "dangerous weapons".

Ultimately, Plaintiff mostly seeks severence and disgorgement of the profits from "the value of the infringing content" from the entirety of Street Fighter 6, using provided reasonable calculations to estimate the value of the specific registered copyright motion as either 1/2100 or 1/392 of each unit of any game editions of Street Fighter 6, which in the least has sold 6 million units averaging $50 per units; the total lowball calculation suggested by Plaintiff for no other reason than communicating indirectly to Defendants and to the court through the complaint itself about where-in-the-ballpark a potential reasonable settlement offer would even start from, otherwise reasonably suggesting a high monetary value to this case. Plaintiff is neither invested nor interested in discovering the reasons for how or why Defendants' copied Plaintiff, though Plaintiff demands that Defendants' provide restitution for Plaintiff.

For your consideration,

Fraser Bushnik, pro se
775-530-9109
fraser.bushnik@gmail.com
ichibanfridge@gmail.com

dated:  February 13, 2026